First case. Please oppose the bench counsels. Counselors, you have 15 to 20 minutes to present your argument. We don't watch the clock closely in this division, so you can have as much time as you want. However, we do ask you that you don't repeat yourself, and we ask you that you get to your strongest points first. How much time do each of you think you'll need? Well, Your Honor, the Public Defender's Office and us, we're going to split the time and split the issues. I was going to address the jury instructions, and the Public Defender's Office is going to address sentencing. I believe 20 minutes should cover the five planned remarks. Of course, I'm happy to answer whatever questions you have. Okay, and a rebuttal? Three minutes for rebuttal? Okay. Thank you. Good morning. Good morning. May it please the Court, my name is Christopher Carmichael, and I represent Dwayne Kiles. And as I said, I will be addressing the jury instructions issue, our first issue in both of our briefs on behalf of both parties. The jury is comprised of laypersons, not schooled in the law. And the jury instructions are there to convey the correct principles of law to the laypersons, not to mislead them. Is this abuse of discretion? Is this abuse of discretion? Yes. And the corporate instruction misled the jury. And the lack of a willfulness instruction further misled the jury in this case. When I discuss the corporate instruction, I think it's important to first talk about the context of that instruction. The prosecution presented significant evidence about ownership of the corporation. The corporation is not a party to the Third Amendment petition and has been dropped. The prosecution presented significant evidence about mortgages, about contracts executed by employees. A lot of evidence was presented about ownership of the corporation and the corporation itself. Now, the instruction doesn't really apply to this evidence. But the layperson jury was told to take this evidence, and then they were given this corporate instruction. And that misled them into thinking that they could consider the acts of the corporation independently of the acts of the individuals. The jury asked to look at those contracts during deliberations. And they asked two questions. Can we see the contracts? And what's willfulness mean? That's an important fact, because it shows the jury was drilling in and looking at the key issue that confused them, which was the corporate acts and the personal acts of either Wayne. How soon after, when they went back to the jury room, what was the timeline before the first note?  I don't think it was a significant amount of time, but I can't say for sure. It would certainly make a difference if it was three days later as opposed to an hour later. I don't believe the jury deliberated for more than a day. Thank you. As to the instructions, there was a conference here, though, right? Ted Scholeski had a conference. And they pointed out at page 18 of the blue brief that counsel for Mr. Kiles wanted what they call black instruction, or probably a definition of willfulness, but that he agreed with the city's position that he'd rather have no instruction rather than 501B. And then Collins' attorney said, that's fine, Judge. You have to preserve a record. So, frankly, the trial court was unaware there was an IPI in willfulness because the trial court is a civil court. And the parties advised him correctly, well, there is. It's 501B. And then the parties apparently said, well, we don't want it. Okay. And the poor judge, who would be reversing, and he can handle it, did what was asked by the parties. And now, it being a bad result, how is it that it's not forfeited? I think there's several answers to that question. First, obviously, the court, particularly on an issue of such importance as the key element of this crime, has an independent duty to make sure the jury is properly instructed. And the court had, as you pointed out, 501B in front of it, so it knew the proper instruction. And it did not do so. So, this court, and obviously, although waivers and admonition upon the parties, this court has the power to look at that issue, particularly when it's of such importance as the key element of the crime. And in any event, I think there's plain error here that shows that this instruction should have been given under the circumstances where the jury asked a question about it during deliberations. So, first, you have no instruction given at all about willfulness. And then, you have the jury asking a question about that, and that's the key element of this crime. And particularly, when you consider the corporate instruction, which was erroneously given also, not giving a willful instruction further compounds and confuses the jury and requires reversal. Did Hollins concede that that instruction should not be given? I believe that neither party, neither of the respondents were in favor of the IPI 501B during trial. There was, Hollins was asking for the definition of blacks. Yes, he asked for, his counsel asked for, and Kyles joined in a request to instruct on willfulness through Black's Law Dictionary, which had what they felt was a simple definition. I guess I should point out as well that at the time 501B was proffered, it was proffered the entire instruction, and the first two parts of that instruction are not go-to knowledge, not willfulness, as opposed to the third part of the instruction, which actually goes to willfulness. So, I believe there was some confusion as to the appropriateness of that instruction, considering the entire instruction would be inappropriate, whereas just the third part of that instruction would have been appropriate where willfulness is the element and knowledge is not an element of this crime. You raised in your brief, counsel, that, quoting, the ambiguity in the order was never identified, never clarified, and the respondents were wrongfully convicted of violating an ambiguous order. That's all. There's not a cite for that proposition. There's no other further argument. This is the third time this case has been before court. Once before this division, we were strongly questioning the city corporation counsel's office at the time how anybody could read the order, which, for anybody's edification reasons, by agreement, Merage will not occupy second floor VIP rooms. That's the order of which Mr. Kyle and Mr. Holland stand convicted. I'm sorry to interrupt, Your Honor, but that's actually the, I believe you were looking at the judge's half sheet. Right. It is a half sheet, but that is the order of the center. Now, I understand the city's position is, and it's their position, not yours, wrote that, what I just read, into a half sheet should not have been sent to the jury. That's another argument you and your partner make. However, again, there's no citation for this, even though this panel has reversed convictions on indirect contempt for failure to issue, for the trial court's failure to issue clear, unambiguous orders, because an order has to be unambiguous before we lock people up in this county. And that was a strong concern in this case years ago. I still have that concern, and yet it's apparently not a concern to the attorneys for Mr. Holland and Mr. Kyle. It was this basis, I believe, that Judge Porter in the criminal case found Mr. Kyle, and this is one of the reasons, although it's hard to fathom a criminal case, since it's a high burden, and Hollands were found not guilty, because how can you convict somebody of their order, a willful violation of such an order? So I see a problem in the issues in this case, and I especially see, not asking for a necessary comment on it, basing the defense on an issues instruction that, at trial, the lawyers for the two defendants agree it's not guilty. Well, Your Honor, I believe there was, nevertheless, on the instruction, plain error not giving it, as I believe Lori and Morris both set out when the jury has a question, particularly when it's about an element of a crime, and it's a crucial element here. It's really the critical element of this crime, not to give it, particularly in the context that we have with this contract being requested, and the evidence about the corporation, I think, is very concerning. One day we were discussing the half-sheet, and I believe it was the same time about the letter. Did someone, like the judge, say it would confuse the jury? Yes, Your Honor. On both the half-sheet and the letter, they were the elephants in the room that were never shown to the jury. People gave testimony about what they thought about those documents, but those documents were never shown to the jury on the theory, the wrong theory, that somehow the half-sheet was going to contradict the order. Obviously, in our briefs, we point out that it was going to show the order was ambiguous, and there was a reason it was kept out. It was extremely powerful evidence. That evidence would show and help show that that order was ambiguous. When you take a look at the transcripts with that half-sheet, it's clear that everybody who was there knew that second floor referred to the second floor of the club, these EIP rooms, not to the entire second floor of the building. When I was reading it, I looked at some pictures, photographs, which were unclear, and I first got the impression that the second floor was really the mezzanine, and one of them shows a dance floor. Now, did the judge mean the second floor of the building, or did the judge mean the second floor of the club itself? Well, I think that's part of the confusion, but based on the context, if you look at the contemporaneous transcript... But you didn't argue that point. Well, we did argue that the evidence was improperly kept out, and that that evidence would have helped show that the order was ambiguous, and that it would have impeached the city's witnesses who, seven, eight years after the incident, claimed that they remembered a five-minute hearing with utter clarity, and that the judge really meant to close the entire club. So we did argue that the order was ambiguous, and the jury was led to a wrong conclusion to convict. Where in your brief do you argue this? Throughout the brief in the section, particularly in the section about the half-sheet and the letter, we discuss how those two items, had they been admitted, would have helped show that the order was ambiguous. The second floor of the building and the second floor of the club, that goes to the order that they violated. Yes, we discussed that both in our opening and our facts, and in those sections about the half-sheet and letter. We put forward the transcripts themselves, which I think we quote at length, in which the corporation council said, we have an agreed order for the second floor VIP rooms. And that's how the whole hearing starts, an agreed order for the second floor VIP rooms. And then what you have later is this order that says, mandatory order not to occupy second floor. Do you have your brief with you? Yes, I do. The things you were just reading are found on page 24 of your brief. Thank you, Your Honor. Thank you. Yes, and on page 22, we argue, and I don't want to quote from my brief because I don't like to do that, but clarification of this ambiguity was essential, because a court order lacking clarity and specificity will not justify finding out the context. And that is what we argue, and we believe it's erroneous exclusion of the evidence, particularly on the grounds that somehow it would confuse the jury when we think it would help show the ambiguity led to the wrong conviction. Confuse the jury? Pardon? When the city argues, well, to show the evidence would confuse the jury, isn't that your purpose, to show that it's ambiguous? Yes, it was. And, I mean, there were a variety of witnesses presented by the city about what the order meant, but the half-sheet, the judge's half-sheet, which is critically important because, as we all know, the judge is sitting there jotting this down at the time that people are discussing it. And this is clearly what the judge thinks. That's very relevant evidence to come in and show that the transcript, the half-sheet, and a variety of other documents can show that the order saying second floor was ambiguous as to what second floor meant. You mean that on August 9th the city attorney asked that the order not to occupy, be continued to the next court date, and then the city attorney basically said, the order refers to the VIP rooms and the mezzanine. Yes. I've got to ask you a question. Well, and that's repeated over and over again, where the VIP rooms and the mezzanine are discussed as the second floor. Because for the club, they're the second floor of the club. Nobody explains to the judge up front and gives him a picture of the building, tells him how it's all structured, how everything's put together. He's told that there's a second floor of this club that was built without permits, this mezzanine VIP level, and that's dangerous. And there's an order not to occupy. Was there ever any evidence to prove one way or another that it was dangerous? No, there was just the city's petition and violation notices by the inspector. I looked at it saying it must be a second floor because I have to look up at it and look at those dangling feet. Somehow some man had his feet go through the floor. That's what I believe the security guard testified to. So if you were in the club on the club floor, the dance floor as you put it, you would look up and the VIP rooms were above that. And I know the city did put in the inspector saying it was not proper, but obviously I think there is evidence that they used to house an auto dealership and motors and other things may have been up there. Obviously those are significantly heavy items as well. Well, taking my concern as a legitimate one that in your argument just now, gosh, the order really only should be read to mean the VIP rooms should be closed. Every witness the Corporation Counsel's Office called testified about the VIP rooms. None of them just said, oh, by the way, the bar was open, the main floor, let's call it. The main floor was open. Clearly the main floor was open. All six of them testified. But all six also testified every time I was in that club that the VIP rooms were occupied. Is that correct? Am I misreading? No, that's correct, Your Honor. It was testimony as to that. Okay. And the issue there was there was no connection established of either knowledge, acquiescence or some type of action on part of the respondents in that action. The club had been leased out to Envy Productions, which I think was before this court at one time in the criminal case. And they were running security and other things. The other evidence that was out there was that Mr. Kiles, confirmed by Mr. Royce, had taken actions to try and close that area. Now, obviously if someone rents it out and they decide they're going to go up there anyway, that's another question. But this is sort of where the contracts come in and the corporate liability starts to become an issue because the city was having trouble making that connection between the respondents and some sort of connection to the actual occupancy of that VIP or mezzanine level. And so they took the contracts and made up for that by saying, well, the corporation signs the contracts, so convict. And they push that very hard and use that corporate instruction and then we don't have our willfulness instruction where we have a confused jury of issues in note and says, we'd like to know what willfulness means. And that they should have been told at that point what willfulness means. Had they not been given that corporate instruction and had they been given a willfulness instruction, we don't believe we'd be here today. I don't know how much time I've used, but perhaps I'll let the Public Defender's Council speak now. We have a time limit, but like I said, we want to hear everything. So if you have more to say, take it. I believe I've covered my points directly or indirectly. I have a question in reference to Attorney Pendergrass who was at the first hearing on July 19th. And then he had an understanding of what was happening and then he called Attorney Royce and he related to Attorney Royce, and correct me if I'm wrong, he relates to Attorney Royce that it was the second floor of the dance hall, not the second floor of the building, the second floor of the dance hall that was closed. And then Attorney Royce later then got a copy of the court order. Yes. And I'm going through this because my colleagues have been on this case for ten years. I've been on it for four months. Okay? So it's my understanding. You correct me if I'm wrong and the other side does the same thing. So then Attorney Royce then, he relates to Tiles and Hollins in some form or fashion. And then he gets a copy of the court order and he sees that the court order is in conflict with what he was told by Attorney Pendergrass. So then he goes to the court and he looks at the half sheet. And according to your allegations, the half sheet then complies or is very close to what Attorney Pendergrass said. So then he believes that he's on point in what he told Hollins and Tiles in reference to this matter. And then the case kept coming up, continuing several times in court. And there was testimony in reference to this. There was testimony where the judge would say that all court orders are still in full force in effect. And no one ever asked the judge to talk about the discrepancy. Why didn't the attorneys raise that issue? Apparently for Attorney, I think it would be Royce, because he was relayed the information by Attorney Pendergrass. He felt after looking at the half sheet, the judge's order, and his friend or office mate's letter that he understood that the order meant second floor VIP. And apparently he believed that the order made sense at that point. So I don't think he felt it was necessary to clarify that issue. So you're saying that after reading the half sheet and looking at the order itself, it's clear that the half sheet hasn't followed because the judge wrote second floor. And he interpreted that to mean second floor of the club. Yes. Okay. And that's what he told. Doesn't that make the order itself ambiguous? Well, we believe the order was inherently ambiguous. And if you take a look at the contemporaneous transcript, the half sheet, the order, and the letter, there's an inherent ambiguity in there as to what second floor means, particularly when the judge, who has no idea of what building he's talking about, gets approached at a hearing he hears dozens and dozens of times a day in building court and gets told there's an agreed order and there's a second floor VIP room that's a problem. And some clerk for the city writes out a mandatory order not to occupy second floor, hearing second floor mentioned during this conference. And then after this incident happens, the tragic accident happens, then suddenly now it means something different than what it clearly meant to everybody who was there. So we think the order is inherently ambiguous. But you didn't argue that. Well, we did argue that. I think it was on page 20 of our brief in the discussion about the evidence and the exclusion of both the half sheet and the attorney's letter and how important in particular the half sheet and the attorney's letter were to let the jury actually see those documents, see them for themselves. So they got this order here they're told and it just says second floor and there's a half sheet, which if they were told it was the judge's notes and he writes second floor VIP, I think those were very important facts that were excluded from the jury. So therefore there was a proper objection when the judge indicated that he was not going to admit the half sheet in the letter. Yeah, I think the judge in his mind, it was clear, the order to him was clear and there's sporadic testimony throughout the, or sporadic comments throughout the transcripts. When the judge feels the order is clear and that they're not going to confuse it by admitting this half sheet or contravening the order, but that's the wrong view of the half sheet. The half sheet comes in as part of the court record and can be used to interpret a court order and show it was ambiguous, which the half sheet does very well. So we believe that's an additional point that this court should reverse on. Thank you, counsel. One more question. What would you want this court to do if you had your way? If I had my way? Based upon your brief. In the best possible ways, the court finds the order to be so ambiguous that there could be no conviction. But obviously we've requested vacate the verdict and remand for a new trial based upon both on the improper instruction and the evidentiary issue. If we find the order ambiguous, wouldn't that end the case? It should. Why would we send it back? Oh, I meant alternatively, Your Honor, that you would, alternatively, you would vacate the conviction and remand for a new trial. Are you familiar with building court? Yes, I've been there a few times, actually. Is this uncommon to send someone to jail for violating an order? It is very uncommon, but I think that's maybe the public defender's issue on sentencing that they were going to address. How many cases have you found in building court where someone violated an order and was sent to jail or sanctioned? We found none. We found two building court appellate reported cases, and neither of those people actually served jail time. We both got probation. How many cases are there where someone violated the order and nothing was done? Is it true that every day there's a violation if it's continued, as this case was? Certainly, Your Honor. I think if you went over there today, you'd find a whole lot of rules that show cause and other things. I was once found, when I was trying to change things around, I found one with 146 continuances. That would not surprise me. Thank you. Good morning, Your Honor. Vicki Rogers, assistant public defender on behalf of Collins, and also, I'll be arguing the sentencing issue on behalf of both appellants. Your Honor, there is nowhere in Illinois history where a two-year sentence has been imposed for a roof that did not fall and did not injure anyone. The court order was to either close the VIP rooms or to close the entire club. The trial was for indirect attempt for not closing either the VIP rooms or the entire club. The jury found them guilty of violating the court order to close either the VIP room or the club, but the two-year sentence that the judge imposed was for the 21 deaths that occurred on February 2003.  There is no case law we found in Illinois where anyone for violating a building court ordinance has ever been sentenced to prison. We found two cases where one individual for seven years violated a court order to not occupy one of the units. We found another case where someone violated a court order to reduce the unit for 15 years. Nowhere has it ever been where there is no injury, a sentence imposed. The facts of this case don't warrant a two-year sentence. As I said, the roof never fell. The skyboxes never fell on anyone. What we have here was a jury who had the right to either find them guilty based on alternative theories, close the VIP rooms or they didn't close the entire club. No injury occurred because they didn't close it. The roofs and the skyboxes never fell. No one was injured. The city claims there was no abuse of discretion, but we clearly have here a situation where the only aggravation presented by the city was 21 people died on February 2003 because this club was open. That is not proximate cause. This court had already held that there was no proximate cause between the deaths that occurred on February 2003 and their act of not closing the club. The roof did not fall. So for the city to be able to argue as sentencing an irrelevant fact and for the judge to hear aggravation on that after hearing ten live mitigation witnesses who testified about the character of my client, it was a clear abuse of discretion. There was nothing here to support that. The but-for argument of the city is not persuasive. But for anyone having a building code violation and there is an injury that is not related to the violation, then you can find that person in contempt and give them a sentence on that. The argument the city makes is the same as someone being given a building code violation for a bad roof and then someone falling and tripping on the carpet in the same building. That's not a violation. That did not cause the violation. There was no injury as a result of that violation. The standard was not followed here. This was a minimum violation here. It had only been going on the case started in July where the greed order was entered. We're talking about seven months here where I've already told you about cases for seven years or 15 years where violations are allowed to continue in building court, and they were constantly coming to court. They were constantly trying to determine whether or not there was a problem with the roof because this hadn't even been determined that there truly was a problem with the roof. There might be a problem with the roof. And the punishment here should have been measured by the gravity of the contentious conduct, of not closing the club. The damage to the court's authority was very minimal here. And because of that, we're asking that you modify their sentence based on your Supreme Court authority under Rule 651 to community service or some type of probation. Correct me if I'm wrong, but you're saying if the building was free of all violations, this tragedy still would occur. Yes, because it had nothing. You had an incident. What caused the events of February 2003 were tragic. But you had pepper spray, first a fight on the dance floor, pepper spray being sprayed, and some people yelling, and threats, or terrorists, and then people rushing to the door. So even if the club had no violations, you still could have had this accident where this could have occurred. So their conduct here had nothing to do with that, and it was wrong for them to receive a two-year sentence based on the 21 deaths. Well, again, if the trial court, Judge Gillespie's reading, if it was correct, the whole city's position really is, from day one, it wasn't just the second floor VIP rooms, but rather the whole club. The order read, second floor, which would to me be the main floor, must be closed. And certainly if the club was closed, none of the 22 people would have died, or the hundreds of people who were injured. Correct? If the club was closed, that's true, but that's not a proximate cause, Your Honor. The definition of proximate cause is that there can be no intervening events between the act or mission that was done. Here, as I said, we had a fight, pepper spray, people yelling, and rushing to the door. Those are intervening events that caused the deaths, not the roof and the skyboxes not being adequately supported, the truss not being adequately supported for the skyboxes. So that's not the legal definition of proximate cause. Their but-for argument, as I said, is any injury that happens, no matter what type of violation you have that's not related to the violation, then that's the proximate cause. That's not the legal definition. And so we ask, Your Honor, that because of the fact that there was no correlation between the deaths that occurred here and the violations that occurred, the sentence of two years was excessive. It was an abuse of discretion, and we ask that you modify that under your authority. Thank you. Thank you. May it please the Court. Carrie Maloney Layton on behalf of the City of Chicago. Your Honor, after a jury trial, respondents were convicted of indirect criminal contempt for willfully violating building court orders not to occupy the second floor of the building that housed their nightclub. Because that floor was occupied on February... But what did the judge mean? Did he mean the second floor of the building? Or the second floor of the club? The order clearly states, mandatory order not to occupy second floor. This is one thing I agree with. What's a mandatory order as opposed to an order signed by a judge? Pardon? What's the difference between a mandatory order and just an order often signed by a judge? This order was signed by the judge. It was mandatory. It uses the word mandatory. Correct. That means do not occupy the second floor. In building court, this Court can take notice that building court orders are directed to building, not to businesses, not to mezzanine levels. It's directed to what is in the building. That order said mandatory order not to occupy the second floor. And yet the city attorney from time to time clarified it by saying second floor, we mean the VIP rooms, skyboxes, whatever they are, and the mezzanine level. But whatever... Did he say that? There are certainly places in the transcript in which the VIP room and the mezzanine were talked about because that was the cause of the danger. There were 11 violations. We're only around the second floor, period, as opposed to the second floor skyboxes and... Well, some of them pertain to plans and permits, but the point is that it got reduced... I'm sorry, Your Honor. None affected the club, except the skyboxes and the mezzanine level. The main concern of the city inspector at the time of the hearing was the danger posed by the mezzanine and the skyboxes overhanging the second floor. I'm sorry, Your Honor. Were all 11 violations pertaining to the mezzanine level? No, I don't recall what all 11 of the violations were, Your Honor, and so I apologize if I'm not answering your question about all 11. I don't want to misrepresent what all of them were. Some of them I recall were that there were not plans and permits and that there were not occupancy cards posted and things of that nature. But the relevant point is that that order got reduced to a written order, that if they had a misunderstanding about what that order meant or if the judge meant something else other than what it said, and again, that order was repeated four times, and in fact, in open court, the court said to Mr. Kiles, is it agreeable to continue the order not to occupy the mezzanine, the second floor, and the VIP room, to which he responded, yes. So if there was any sort of ambiguity about what it meant. Not rational, maybe, but couldn't I read that as the second floor of the club? No, because in building court, orders are directed to buildings. An order that says mandatory order not to occupy. Just buildings, not cards? No, the building court adjudicates not the business that's inside the building, it adjudicates whether there's danger posed by the building. There was testimony to that effect in the trial here. But the point is there were written orders. Those orders are clearly worded. If an inspector is saying it's dangerous and hazardous, what would you expect the judge to do? To enter an order, to not occupy. I'm not sure I understand the question, Your Honor. What would I expect the court to do if there was testimony that there was dangers and hazards? To close the club, the second floor. That's the testimony, that there was a danger posed to the second floor by the overhanging VIP areas and mezzanine levels, which could have fallen onto the dance floor. So that's the order that got reduced to writing. If there was confusion about what that order was supposed to mean, it's not okay to just not follow the order and what it clearly says. And, in fact, to this day, respondents are not claiming that that language is not clear. They're claiming that there's other evidence outside the four corners of that order that calls into question what was really intended to be closed. They don't claim that the language that's on the order is unclear. That is clear. They don't doubt it. Did the judge mean the second floor of the club, or did he mean the second floor of the building? I don't think he meant the second floor of the club, but that's not relevant anymore. What he's had in his head, or what he thought, or what he was intending to do, what's important is what he wrote down. And it was incumbent on them, if there was ambiguity in their mind. I don't think there was. I don't think there was any. I think when Mr. Klaus said, yeah, second floor, that means up here of my club. Well, if you look at the transcripts, there are a number of places in which the court, for example, that court date when Mr. Klaus stood in open court and said, is it agreeable to continue the order not to occupy the mezzanine, the VIP, and the second floor? That was on August 9th. That was October 25th. Okay, October 25th of August 9th, so it's about the same thing. Occupy the second floor, mezzanine, and VIP rooms. The city attorney clarified that. But what the city attorney says at the hearing is not relevant to what gets reduced to writing, and the orders are what the parties are charged with obeying. It's not the transcripts. It's not what the judge's written notes are. It's what is the court order is the document that's important. This court has held that. Half-sheet cell control. Second floor of the club or second floor of the building. See, that's to me, when I read this case the first time, first of all, I had a hard time understanding what it was, and then finally, after a lot of help from my clerk, we figured out it was actually a two-story building with hanging things above it. Correct, and there are pictures in the record if Your Honor would go. Mr. Kearney, is it Kearney?  And Mr. Kearney on several occasions, at least two, August 9th and October 25th, clarifies it by saying the mezzanine level and the skybox. Well, the mezzanine level, to be sure, was where the danger stems from. But what Mr. Kearney said in the transcript is not relevant to what got reduced to writing as the court's order. I mean, that would be remarkable for this court to hold that people can go out and violate court orders because of something that one of the attorneys said at the hearing. What happened is it got reduced to writing four times in a way that said mandatory order. Four times, I'm sorry, you mean it was continued? No, yes, the written order got reproduced after each court date, got reproduced that said the same language, not mandatory order not to occupy the VIP, mandatory order not to occupy second floor, and that was the order. So if the parties thought it meant something else because of what the city attorney was saying or what the judge had said or whatever was in their mind, they could have gone back to the court and said, you know what, judge, in fact when Mr. Collins was standing in front of the judge on October 25th and the judge said is it agreeable to continue the order not to occupy the VIP, the second floor, and the mezzanine, he could have said, you know what, your honor, I thought I was only not supposed to occupy the mezzanine, not the second floor, why are you talking about second floor? He didn't do that. That's what parties do. Didn't that occur though? Again, the order I read was written by Judge Lynch on July 19th of 2002, and on page seven of your brief you point out that on October 23rd of 2002, Inspector Montilla goes to the court. So again, that would be some three months after Judge Lynch's order about what he means and the order for these people to stand to go to prison for. Three months after the order is entered, Chaly and Montilla, working for the city of Chicago, go to the club and they go to the mezzanine area. And Mr. Montilla puts a napkin down on a table in the mezzanine area. He says I'm going to leave this napkin here and the next time I come back that napkin should be there, right? And whoever he talked to, I don't remember right now, but I read it at the time, said that's right. That napkin should be there because this should be unoccupied. So Mr. Montilla, by doing so, representative of the city of Chicago, isn't he saying I'm concerned about this upper area. We're not concerned about the main floor. And this is three months after the order is issued. Is that right? Am I misreading it? Well, if you look at the testimony, the testimony of Chaly and Montilla was that they went over the entirety of the club. They didn't just go up to the mezzanine level. That is where you put the napkin. That is correct, Your Honor. But, Your Honor, the important point is that's not open for this court's review. All that evidence was before the jury. This was a jury trial. That goes to whether Mr. Kiles and Mr. Hollins willfully violated the order. If they had a misunderstanding about what the order meant, that's a defense because that shows they perhaps were not willfully violating it. But all that was before the jury to decide. It's not up to the court to interpret what it thinks was the correct interpretation. At the end of the day, especially on contempt cases, because this is contempt of court. It's not contempt of the city of Chicago or the court counsel's office. It is the contempt of Judge Lynch's order. Correct. And we're judges. And so that's the first person who should be concerned about this, the first institution that should be concerned about this, is the court system. Now, again, the corporation counsel's office brings this because we are not prosecutors. But that is who needs to review these things. And in the real world, how this works, when courts write orders, as Judge Lynch wrote his summary of the order here in a handsheet, and the law clerk writes, which Judge Lynch then signs, which just means Judge Lynch wrote it and says the second floor, how that works and what does the businessman have to do. And that's what this is. So it's not an order from on high. What does this mean? And was it deserving of being convicted of, before we get to any sentencing, was it deserving of being convicted in direct contempt of court when the owners keep the place open, the city knows it's open, and the city says, don't open the second floor. And the answer is, yes, it should be, because they're on notice from the order. They were on notice from the order. And it was for the jury to decide whether their misunderstanding was sufficient to call into question whether their violation of the order, which they concede they violated the order. It's four corners. They were occupying the second floor. But what they don't concede is that they were occupying the VIP lounge. Now, there was testimony they occupied that too. But that aside, that was for the jury to decide. That was all in front of the jury. And they heard that evidence. They looked at the transcripts that Justice Murphy was referring to. Oh, well, they do that. I mean, I think contempt case. And so the contempt case depends on whether or not the court order was violent, that the nature of the offense is a closed-arm robbery, rape, and murder, which most people would know about. Don't kill your neighbor. Don't rape them. But in a court order, which is, would you, can't courts, in this case three judges, who are frankly pretty old guys now, be able to interpret the orders that are in front of us? So the half-sheet, a by-agreement, the VIP room, the order entered the same day, written by a law clerk, second floor. So what is meant by that? Because, as Justice Murphy used to be the supervisor of that court, the housing court, can't we rely on that and say, we know what that means, as do the practitioners, as do the lawyers, as do the landowners? Frankly, more so than the jury. Because the question is, what is the legal significance? What should be the criminal liability, should there be criminal liability, for how you interpret that order? Well, Your Honor, again, no one has doubted the language of the order itself is clear. What Your Honor is pointing to, to make it unclear, are documents and testimony outside of the four corners of the order itself. No one doubts the words, mandatory order not to occupy second floor, are clear. It's only when you bring in, well, does the half-sheet call into question whether it meant this floor or the mezzanine level, that it's doubtful. And that is not open for this court to decide. I mean, this court has made it quite clear in the City of Chicago versus American National Bank and Trust and the Federal Sign and Signal Court case, that it is the four corners of the document that control. That it's not a half-sheet. It's nothing outside the record. It's what this document says. Now, what Your Honor is pointing to is what their defense was about their state of mind. And that was all before the jury. That's not for the court to determine as a legal matter. That's for the... But the jury never saw the half-sheet. They didn't need to see the half-sheet, Your Honor. In fact, the half-sheet would have permitted the impermissible argument that now we're getting into the realm of. Whether there was a possibility that the order meant something other than it did. That wasn't for the jury to decide. The jury was charged with whether they violated the written order that was before them. Now, what the half-sheet was relevant for was to go to the state of mind of Mr. Kyle. But he got into that and more. Everything he could have gotten in by virtue of admitting the half-sheet. Because the half-sheet wasn't enough to get the state of mind. What was required was the testimony of Mr. Royce. He said, I looked at the half-sheet. I'm his attorney. I advised him. I thought it was ambiguous. And Mr. Kyle then took the stand and said, this is what my attorney told me. And that's why I acted as I did. That was all before the jury. Seeing the document wouldn't have added nothing. In the real world, we're talking about the real world, being a judge over in domestic relations, in juvenile, where you have half-sheets and where you refer back to the half-sheets that there's a conflict. In the real world, nine times out of ten or 80 times out of 100, there's a conflict. The judge is going to go to his half-sheet and what his half-sheet says is going to dictate. Now, in this particular case, as I understand it, the half-sheet is in conflict with what the court orders say. Also, in my reading, the court order was prepared by a law clerk. What I read, it wasn't even prepared by the attorney. It was prepared by a law clerk. In high-value courtrooms, quite often, though judges shouldn't do this, but quite often, every day, if the judge has told us an agreed order, they would take the order and just go through a cursory, sign it, and pass it on. And then they're writing the half-sheet with their order. So the half-sheet does have relevance. Now, the one issue with me is, should the half-sheet have gone to the jury? Should the jury have had the privilege of seeing what the judge had in this half-sheet to perhaps sway them one way or another? No, Your Honor. The half-sheet might have had relevance back in the building court proceedings. What Your Honor says, if there's an ambiguity, the court will look at the half-sheet. That's exactly what should have happened. They should have gone before. When they thought the order, the half-sheet, conflicted with the order, they should have gone back to the court, and Your Honor said, well, it was prepared by a clerk. That was the first order. There were four. They went back to court four times, including the time Mr. Kyle stood in open court. So they could have any of that time said, look, your half-sheet says something else, Your Honor. What did they do when they went back? Were there not a couple times in the testimony where the attorney for the city or the state said, we're referring to the balcony? Well, they're referring to the balcony as the danger. That was clearly the case. That was being what was the danger. That was the main concern. But there were other parts in the testimony where they talked about the second floor. So you take what you want from that, but the point is it gets reduced to writing, and this court's cases clearly hold that nothing outside the four corners are what matters. It would be remarkable. Going back to page 34 where you have American National Bank and Signal Corp. Were those criminal contempt cases? Was anybody trying to lock up Signal Corp. or American National Bank's trustees? I don't believe so, Your Honor. They were not criminal contempt cases, but they do talk about what is the document that controls. But it would. And she's saying because it's a fact that these orders in the housing court aren't directed to buildings and not to human beings. However, so Signal Corp. and American National Bank, even though I'm sure they only knew the address, they're held liable because it's their building that's being proceeded against. In this case, the city of Chicago is endeavoring to put Mr. Holland, not this building, into prison, but Mr. Holland's and Sir Kyle's into prison. And therefore, they've decided and proven beyond a reasonable doubt to the satisfaction of 12 citizens that Mr. Kyle's and Mr. Holland's are indeed guilty of indirect contempt of court. As I suggested, I'm concerned about that. Again, going back to the nature of this proceeding, and not that I'm outraged by anything, because we have 22 young people who died in a horrible, horrible incident, where that is the goal. And again, not in any way trying to criticize the purpose behind indirect contempt of court. That, I suggest, is different than your normal housing court problem. You have to prove that they willfully did it, that their violation was of a criminal nature. That is correct, Your Honor. They do have to prove willfulness. But that doesn't call into question what the order says. The proof had to be, did they willfully violate this document, these four corners? And wouldn't a half-sheet help them decide? Well, to finish answering, yes. I don't think the half-sheet would help them decide that. They say willfulness, and the half-sheet says? This is an abuse of discretion standard on whether that evidence should have been or should not have been included. It's abuse of discretion. In light of what was admitted. And, in fact, it was even better what got admitted, as opposed to what was excluded. What was admitted was a testimony of an attorney who said, I went to court and viewed that half-sheet. The jury didn't need to see that document. What they got was even better. They got an attorney saying, I thought it was ambiguous. I advise Mr. Hiles of that. And that gets back to what you were saying just a moment ago. Well, you presume that people trust attorney's testimony. I've been in this for 31 years. I don't know that they do that. Just read, if I may, two sentences to you that you wrote or somebody wrote. And then you can reflect. Okay. Thus, and same reading about page 34. Thus, if the half-sheet had been admitted, the jury could have been confused about its relevance or whether it controlled. The court properly excluded the half-sheet in light of its potential for confusion. Right. It doesn't have to go to willfulness. I was confused. Okay. Sorry. Go ahead. I'm sorry for not being clear. I'm trying to get at that there's two possible reasons to look at this document. Okay. The one purpose was relevant. And that gets to what you were asking before. It's about willfulness, the state of mind. But on that purpose, this document, there was no abuse of discretion to exclude, because everything and more that could have been gleaned from it was already admitted. If the jury had seen the document, they wouldn't have said, oh, willfulness. They would have to understand the attorney looked at it, he advised his client it meant something else, and Mr. Kiles acted accordingly. Those steps are what's relevant to get to willfulness. The document itself just is the start of that change. What is improper and potentially confusing is what we've been talking about here, and that's whether it was open to the jury to decide that the words mandatory order not to occupy second floor meant something other than they did. That, under the law, is not open to them to decide because, in the cases we cite, among others, it is the court's written order that governs people's conduct. If they think that they have a misunderstanding or the court meant something other than it did or should have said something else, then they should go back and get the court to change it. But they have to, in the meantime, obey what is written. Well, again, it's the written order. The only order written by Judge Lundstedt was the by-agreement to second floor VIP room. No, the only written order was the order that said mandatory order not to occupy second floor. That was the document entered as a court order. Are you saying that if it said, I'm thinking of an example, that all kinds of evidence is contrary to that written order, all kinds of evidence, the mayor himself came in and said, we mean the mezzanine VIP room. You mean we can't review that order by all the other testimony and say only that Judge Lundstedt must have been thinking of? Correct, Your Honor. I'm saying that people have an obligation to obey what the written court order says. The written order says do not occupy the second floor of the club. No, it doesn't say club. It does not. The written order says mandatory order not to occupy second floor. Second floor of what? Again, the building, because it's a building court. No, is that what it says? No, it says mandatory order not to occupy second floor. So it's open. It doesn't say building, and it doesn't say second floor of the ballroom. It just says not to occupy second floor. Wouldn't you think that there could possibly be, perhaps, a misunderstanding of that? And it was open to Mr. Kiles to present that testimony to the jury about why he was confused. Because he has a second floor to his club. It's not really a whole floor. It's a mezzanine that goes around the edges. I mean, the court should not misunderstand that it's not covering the entirety of the second floor. It's just boxes that are along the walls overhanging the dance floor. It's probably the prosecutor's job to prove that the answer is told outright. Theoretically, no proof. Correct. But what needed to be proven was willful violation of the court order. And that order said mandatory order not to occupy second floor. Can you address sentencing? Sure. May I? I will have you address sentencing. But I also want to address the jury instruction, too. I mean, I can go to sentencing first, whatever you want. No, you can go to the instruction first. You go away. Okay. Regarding the willful instruction, it would be remarkable for this court to hold it was an abuse of the court's discretion not to give an instruction that neither respondent wanted given. In fact, Mr. Kyle said he would rather have nothing than 501B. And Mr. Hollins wanted Black's Law Dictionary, which he now perceives incorrectly states the law. So for this court to hold it abused the court's discretion not to give 501B when neither party wanted it would be something. And after the jury sent back its note, again, the same thing. Mr. Hollins wanted Black's. Mr. Kyle did not say anything about the jury. He didn't even quarrel with the judge's call to send back a note saying continue deliberating based on what you've already been given. Even in their post-trial, nothing about 501B. No. So Kyle conceded, but Hollins still did not. Hollins still wanted a definition different from Illinois' pattern instruction. He wanted Black. Correct. So the judge hearing that, do you think the judge had an obligation to then give the jury something because the jury is asking? And give me a lead case where the judge shouldn't do anything. Well, Your Honor, the judge should not have given an incorrect statement. It would not be an abuse of the court's discretion to not give an incorrect statement of law. Mr. Hollins concedes now that what he was pressing for, Black, was wrong. So the court did not abuse its discretion by not giving Black, which was incorrectly fitting the law. So we have one party who insists he wants nothing rather than 501B. Another party saying don't give 501B, give the wrong instruction, give Black. The judge was well within his discretion to say this jury doesn't need an instruction on what is a commonly understood term, willful. In fact, actually, if you're going to 501B, what would be your lead case? The lead case on not getting an instruction, Your Honor. Well, we cite in our brief, we cite, I believe it's Powell and Sanchez, and I can find those for Your Honor. Well, READ is a Supreme Court case that stands for the proposition that a jury does not need to have its notes answered. People v. Sanchez, the court held that the term willful is within the jury's common, that terms that are within the jury's common understanding do not require instruction. And in Powell, the court held that terms such as knowingly don't require an instruction because they have a plain meaning that's understood by the jury. Again, this is an abuse of discretion issue. So even if there are cases that come out the other way, under a different set of facts, that does not mean that this court abuses discretion by coming out differently under this set of facts. And what I wanted to say about the language of the jury's note, as the court described it in the transcript, the language of the note requested the legal definition of willful. The judge was within its discretion to interpret that note as simply saying, is there a legal definition that's different than what we commonly understand willful to mean? And willful is not a complicated word. It's something that people of intelligence or people that are sitting on the jury are commonly going to at least have an idea of what it's meant. Well, their argument today, though, is that the city asked for and got an instruction on corporate liability. So that if La Mirage Inc. had done this, they're responsible for it. Correct? That's wrong, Your Honor, because the... Was I instructed on corporate? That is correct, Your Honor. That was their argument. But that is not what the instruction said. Whatever it is, I don't have the instruction. Because if they were instructed about corporate liability, were they not? And is that the type of thing that a normal guy off the street, you know, What do you know about corporate liability in a direct criminal contempt manner? Obviously, I don't know anything, because I just misquoted the instruction. So I'm not a smart guy, but, you know, I'm on this case. I don't know what it is. So I suggested to say it's just plain... Well, see, there was an instruction given on corporate. And because it might have been confusing. I mean, it might have been confusing. And so maybe that was not within the jury's competence to understand as a layperson. But the word willful, knowingly, those are. And... But the induction within us on attorney cases is, so willful, I would grant you, is normal. Even though we have an instruction, most people don't. But the question asked to me, and again, we're all retailers when it comes to these jurors. I was having seen thousands of them. Does it mean, as they suggest, the defense suggests, when it's in the jury's consent instruction, please define willfully, that there's particularly concern in this case, because I received an instruction regarding corporate liability or whatever the phrase would be. This kind of makes sense, but again, we don't know that. Well, we don't know. I don't know. I also don't really understand the connection. Just because... Because if you look at the instruction, what the instruction says is, a person is legally responsible for conduct which he performs, he performs, or causes to be performed in the name of or on behalf of a corporation. To the same... Right, so you get the doors open. To the same extent as if the conduct were performed in his own name. So it's not about what the corporation did. That's what I don't understand is the argument that this was all about what the corporation did. This was about they did in the name of Les Mirage. They own the nightclub. They performed, so were they aware of it? Were they aware? And the argument was, great job on this court of counsel. Every witness, they called it. You know, fine, the main floor was occupied, of course, but also, every witness testified, the VIP rooms were occupied. Every witness testified. So would you leave a normal trier effect and say, you know what, they did violate the rule, the order, even if it's the order that I'm suggesting the order read. They violated that order. But it was not... Can you move on to sentencing, though, where this is going now? Okay, I'm sorry. Can I just say one final thing on the willful instruction? Because I wanted to point out that the respondents do not call to the court's attention any difference between the definition that's commonly understood to mean willful by the jury and 501B. So for them to now urge what has to be plain error, because they both waived, it has to be plain error to not... to give an instruction that is very circuitous, by the way. You would need those paragraphs on knowledge, contrary to what they were saying, because to get the willful, you have to first define knowingly. So three paragraphs instruction for the judge not to give that, when there's not even a difference that they point out that made a difference in their case. That would be something. But, yes, to move on to sentencing. I apologize, Your Honor. For sentencing, again, abuse of discretion. There are no standards in a contempt case. And it's about the offense to the court. And it's about what the court heard. In this case, the judge was so careful. He listened to ten mitigation witnesses. He considered all the arguments of the parties. He considered the pre-sentencing report. And then he said in great detail, if you read the transcript, that he was strongly moved by the litigation witnesses, but he also had to strongly consider the serious nature of the offense. Now, counsel for Mr. Hollins and Mr. Kyle got up and they said, they talked a lot about this is about being sentenced for the building court, what happened, the danger. It's not about that. It's about what they did violating the court order by continually operating the nightclub. And, again, this is after a jury trial. Then the jury found they willfully violated the order. The judge noted this was going on. Two years for violating an order. Is this the regular practice of the city? It's not the regular practice, but this is an unusual set of circumstances. I suggest it was done because these people were killed. Well, Your Honor, the court – Because it was argued before the judge. Well, Your Honor, it was certainly within the court's power. It would be remarkable for this court to hold that a sentencing court cannot look at what the effect was Tell me how the two are connected. I'm sorry? It's a but for a cause. If the nightclub had been unoccupied, if that second floor had been unoccupied, as the respondents were ordered to do, no one would have died. How about if it's occupied and it's perfect condition? If it had been occupied and in perfect condition. Would this sentence still occur? If it had been – I'm sorry, but the sentence was for violating the court order. So I guess – Well, you started arguing because it's sentencing. You're arguing sentencing. Correct. I'm saying if the building, the entire building, and the second floor and third floor of the building were in perfect condition, everything had – engineers, both sides agree it's in perfect condition. And they were still violating the court order? How could they violate it? I'm sorry. Well, that's what I'm asking. I mean, I guess I'm confused. Would this action still occur? It could have still occurred. That is true. But that's – I mean, the part that's relevant to the sentencing is not whether there was danger or not whether there were defects. Should it be considered by a judge that 27 people died? Yes, Your Honor, because – Because the building wasn't vacated? Because the order was – And because if it was 100% perfect, this accident still would have occurred? If it was 100% perfect, they wouldn't have been in building court order to close the club. So that's why I'm confused. No, no, no. Tell me, would this accident still occur? It could have still occurred, Your Honor. It could have still occurred. What caused the accident? Well, what caused the accident is not relevant to the sentencing. What caused the accident was a long chain of things. It started out with the club was occupied when it should not have been. The second floor was – people were present on that second floor despite order after order saying keep it unoccupied. That was the start. Then a series of other things happened. But the court was not sentencing because of the defects. The court was sentencing because they ignored the court order. If they had not ignored the court order, no one would have been present on that night and no one would have died that night. But the court order was ambiguous. Well, this is a sentencing, though. This is after the jury found beyond a reasonable doubt that – I suggest that I think Judge Porter was right. Well, Justice Murphy had earlier asked or more or less pointed out that he is unfamiliar with any prison sentences coming out of housing or building court, as am I. But we all seem to see – I mean, there's what a strip club calls euphemistically a gentleman's club. Walking distance from here has been open for 10 years in spite of 10 years of court orders closing it. And nobody's been put in jail for a day or a minute for that. I think we say this all the time now. But has anyone died? I mean, that's the difference. So that is the difference. So it's not the violation of the court order that really matters because people violate those every day and nobody goes to jail for that. It is because if somebody dies, then on a property in which a court order had been entered, that results in an extremely serious penalty. What I would say is that the affront to the court's dignity by ignoring a court order is greater when the result of that is death. Now, when the result of that, in the cases they cite, is nothing. Like Suskie and Welch, there were more apartments than there should have been, but nothing bad came of it. But in this case, ignoring the court order caused the club to be open on a night when if it had not been open, no one would have died. But for that, people would be alive. Can you cite any case, reported or un, where somebody went to jail for more than seven days for a violation of a building or housing court order? Not for a building or housing court order. We do cite the Levinson case in which there was a five-year sentence for continually violating the court order by fraud on an estate and lying to the court. Well, theft is different. We would argue that theft is just as serious, if not more so than theft and death and injury. But more importantly, this is abuse of discretion. So the fact that it's never happened before does not mean it's an abuse of the court's discretion to impose that sentence now for the affront to the court's dignity that resulted in people dying. The court order itself, you're saying, because it said second floor, it did not say second floor of the building. It did not, as my colleague pointed out, it did not say second floor of the club. So either way, who prepared this? One of your clerks, the city clerk? The initial order was prepared by a city clerk, correct, Your Honor. But there were more orders than that. If I could have added three words, one way or the other, your clerk, she or he, could have added three words, then it wouldn't be ambiguous to me. Right now, I can't decide. I look at the pictures and see easily how he could have meant second floor of the building. I also say second floor of the club. I would just urge, Your Honor, that that was for the jury. That was a question for the jury. Not if the word was ambiguous. That's up to us. They don't even argue that there's ambiguity in the written language. They argue bringing an extraneous material to interpret a court order makes it ambiguous. That was for them to bring to the building court's attention in the first instance. We're beating a dead horse here. I'm looking at lawfulness. Okay. In court, the city attorney and the appellant's attorney agreed second floor means basically the skyboxes and the mezzanine. Now, then it went to the judge. He wrote it down on a staff sheet, and then it became the order, which is ambiguous. The attorney tells the appellant, it's okay to occupy the second floor, but not the VIP rooms. Second floor of the building, but not the VIP rooms, which you could consider that. The half sheet itself conflicts. So I'm the defendant. The attorney tells me. They might pay attorneys. I should be able to follow their advice. And then the city, I guess, issued some permit or not permits, licenses. Not until after, long after. There were proceedings that were ongoing, the building proceedings. Sorry, the renewal of the liquor license. Let me get this straight. I thought the order was entered. Correct. Then they got their licenses, and then the tragedy occurred. My understanding is that the proceedings, that they were in the process of, the city was in the process of trying to take away the liquor license for misrepresentations that Mr. Kyle had made, representing Mr. Hollins to not be an owner of the club. But my understanding is that process was ongoing beyond just, you know. But even if it were, the city had renewed their buildings, their liquor license, that the city did not know or shut them down for violating the order, does not excuse their violation. You know, I just read something like this, just like that. Clinton, Hillary Clinton, was not told about something by the CIA. So it sounds like, you know, you're just like the federal government. That's probably not such a bad thing to read. Do you have anything else? Unless this court has other questions, we would urge this court to respect the jury's verdict and the sentencing court's discretion. Okay. And to affirm. I just wanted to, the court asked a question about the permits, and in our appendix we attached the two permits that were issued at 893, and they were issued, well, they were printed on November 15, 2002. So that would have been in between the original order in July and the incident in February of 2000. And what comes with those? There's a late hour permit and a cavern permit. Yeah, well, one's a liquor license and one is for a club. You know, you get the late hour permit for that. And then I would note for the court that we cite Williams v. Ingalls Memorial Hospital, which states that court orders are interpreted from the entire context, not just the order in a vacuum. And we did cite other cases where agreed orders are interpreted like contracts the court has previously held, unless the court has any questions. I think your honors have pointed that out. What does second floor mean? To the people, I think we have to put ourselves back into the context of the people who were there. And so there's a big discussion that's had about that. And now, much later, everybody's like, well, we know what it means after everything happens. But those people are standing there. They're talking about this VIP room that's on the second floor of the club, and they've got an issue with it. So everybody thinks that's what's being talked about, and it's right second floor. And as you pointed out, nobody writes second floor of building. Nobody writes second floor of club. Nobody adds something to really tell you what that means. And that's very inherently ambiguous. I don't think it makes a ton of difference other than the point at which, again, from practical considerations, we know that neither attorney really looked at the order, that it's an agreed order. The judge probably didn't spend very much time looking at it. So unfortunately, this is an order that slipped through the cracks because nobody in a high-volume courtroom is really paying attention to details. And unfortunately, something serious happens later, and the order becomes an issue. If nothing else, let me thank the attorneys very much. I think both of you did excellent jobs. We'll take this under advisement.